# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### DELTA DIVISION

---

**BOBBIE HOOD, Individually**
**and on behalf of similarly situated persons**                                   **PLAINTIFF**

**V.**                                                                                    **CASE NO. 2:07CV164**

**CENTRAL UNITED LIFE INSURANCE COMPANY**                                **DEFENDANT**

---

## MEMORANDUM OPINION

This cause comes before the court on the motion [70] of the plaintiff, Bobbie Hood, to

amend/correct the court's order granting summary judgment to the defendant, Central United

Life Insurance Company ("Central United").

Hood and her husband, George, bought a Cancer Treatment Benefit Policy from Central

United in 1986. The policy pays benefits directly to an insured when they are treated for cancer.

In 2004, George was diagnosed with colon cancer. He died in November 2006.

On September 27, 2007, Bobbie filed this lawsuit alleging Central United breached the

terms of the policy by denying benefits owed her. This denial stems from what Hood considers

incorrect calculations of the number of days a patient is entitled to benefits. The contract offers

"per day" payments for treatment. It does not define "day." Central United paid "per day"

benefits based on the hospital charges for room and board. Hood's argument is that room and

board charges only show a patient was in the hospital at midnight. This calculation does not

reflect the number of hours before or after midnight a patient remained in the hospital. Hood

claims the "per day" language in the contract contemplates partial days.

In granting summary judgement the court did not address this argument, instead finding

the statute of limitations had run on Hood's claims. In so doing the court determined the statute

of limitations on Hood's claims was three years. The court found the statute began to run when

George was first denied benefits he was entitled to under the contract. Hood now asks the court

to reconsider that decision.

The Federal Rules of Civil Procedure do not specifically provide for a motion for

reconsideration. The Fifth Circuit has held that such a motion may be entertained by a court and

should be treated either as a motion to "alter or amend" pursuant to Rule 59(e) or a motion from

"relief from judgment" pursuant to Rule 60(b). *Teal v. Eagle Fleet, Inc.*, 933 F.2d 341, 347 (5th

Cir. 1991). Specifically, if the motion for reconsideration is filed and served within ten days of

the rendition of judgment, the motion falls under Rule 59(e), and if it is filed and served after that

time, it falls under the more stringent Rule 60(b). *Teal*, 933 F.2d at 347.

This motion was filed ten days after the court's order granting summary judgement. It

must therefore be considered under the Rule 59(e) standard. Under Rule 59(e), there are three

possible grounds for granting a motion for reconsideration: (1) an intervening change in

controlling law, (2) the availability of new evidence not previously available, and (3) the need to

correct a clear error of law or prevent manifest injustice. *Atkins v. Marathon LeTourneau Co.*,

130 F.R.D. 625, 626 (S.D. Miss. 1990).

Hood relies on ground three arguing the court applied the wrong law. The court relied on

Miss. Code Ann. § 15-1-49 to find a three year statute of limitations for these type claims.

Further the court relied on *Young v. Southern Farm Bureau Life Ins. Co.*, 592 So.2d 103, 107

(Miss. 1991), for the proposition that the statute of limitations began to run when Hood was first

denied payment. Hood now argues the correct statute of limitations is found in Miss. Code Ann.

§ 83-9-5[1] and that a new limitations period began with each denial of payment.  Normally the

court would summarily dismiss such an argument.  Hood raised neither issue in briefing the

original summary judgment motion.  In fact Hood concedes she too relied on *Southern Farm*

*Bureau*.  Rule 59 is not an avenue to raise arguments previously overlooked.  However, in this

case the court will not apply the law of the case doctrine, but will consider the merits of Hood's

arguments.  The court finds justice requires this consideration because of the nature of the suit.

Hood has brought this action on behalf of herself and others similarly situated.  It would be an

injustice to allow other members of a class to bring suit and preclude Hood based on a timely

corrected failure to raise the proper authorities.

Hood argues either a four years or a four years and ninety day statute of limitations

applies to cancer insurance policies.  Miss. Code Ann. § 15-1-49, which the court originally

relied upon, creates a three years statute of limitations applicable to all causes of action unless a

more specific statute applies.  There is no specific statute relating to insurance contracts.

However, Miss. Code Ann. § 83-9-5 requires all insurance contracts to contain certain

provisions.  The provision required by Miss. Code Ann. § 83-9-5(1) provides in pertinent part

"[n]o action shall be brought after the expiration of three (3) years after the time written proof of

loss is required to be furnished."  Section 83-9-5(1) also deals with proof of loss.  The required

section states:

> Written proof of loss must be furnished to the insurer at its said office, in
> case of claim for loss for which this policy provides any periodic payment
> contingent upon continuing loss, within ninety (90) days after the
> termination of the period for which the insurer is liable, and in case of

---

[1] Hood consistently cites to Miss. Code Ann. § 85-9-5; however, the court is certain that is simply a clerical error.

claim for any other loss, within ninety (90) days after the date of such loss.
Failure to furnish such proof within the time required shall not invalidate
or reduce any claim if it was not reasonably possible to give proof within
such time, provided such proof is furnished as soon as reasonably possible
and in no event, except in the absence of legal capacity, later than one (1)
year from the time proof is otherwise required.

The plain language of the statute provides that proof of loss can only be given more than

ninety days after the date of loss if it was not previously possible to give proof.  The insurance

contract in this case, however, does not contain this section.  Instead the instant contract

provides:

Written proof of your claim for benefits, made by completing the claim
form we supply, should be sent to us within ninety days after the date of
loss or as soon as is reasonably possible.  Failure to send us the completed
claim form within ninety days will not affect your right to benefits;
however, you must send us the completed form within one year of the loss.

Mississippi law only allows for proof of loss clauses that provide the same or more protection for

consumers than the clause found in § 83-9-5.  This contract does not include the language stating

that a claim may be brought within three years of the time written proof of loss is required.

However, the contract states it is amended to conform to state law.[2]  State law requires allowing

suit for up to three years after proof of loss is required to be provided.  Thus the contract read in

conjunction with § 83-9-5 would allow suit up to four years from the actual date of loss.

This allowance is not a statue of limitations.  Section 83-9-5 requires insurers to include

certain provisions in their contracts.  It does not create a separate right outside the agreements

made by the parties.  Thus the required language in insurance contracts allows a suit to be

---

[2] Of course the parties' power to contract would not have given them the power to abrogate the required
limitations period even without this clause.

brought at any period within three years of the time that proof of loss is required.

On the other hand, The Mississippi Supreme Court has held statutes of limitation for breach of insurance contracts begin to run only with "the specific refusal to pay." *Id*. at 107 (citing *Loewer v. New York Life Ins. Co.*, 773 F. Supp. 1518, 1521-22 (M.D. Fla. 1991)). As there is no specific statute of limitations for these types of claims, a party would have three years to file suit after an insurer had denied their claim. Both the contractual limitation and the statute of limitations are applicable in this suit. Mississippi law does not allow for parties to shorten a statute of limitations by contract, but it does allow for the extension of such a statute. As such, it is only the expiration of the last of these two periods that would bar a plaintiff from seeking relief.

The next question before the court is whether the statute of limitations began to run with Hood's first loss or a new statute began with each additional loss. The court previously held the statute began to run with the first loss under the contract. Having reconsidered its ruling the court finds its initial order was incorrect.

There is no case on point for this issue. The court previously relied on *Southern Farm Bureau* for the proposition that the statute of limitations began to run at the time of the initial loss. 592 So.2d 103, 107. However, that case dealt with a death benefit. *Id*. at 104. Such a benefit can only accrue once. The instant matter deals with cancer treatments which can occur repeatedly. Enforcing a statute of limitations for all claims from the date the first claim was denied would rob insureds of the protection of the law.

A statute of limitations that begins to run with the acceptance or denial of each individual claim is more consistent with both general principles of equity and Mississippi law. As stated

5

above, the statute of limitations for breach of insurance contracts begins to run only with "the

specific refusal to pay." In this instance, Central United would have needed to consider each

claim after Hood's hospital stays. Thus the statute of limitations would not have began to run

until Central United approved or denied a specific claim. As such at least some of Hood's claims

are within the limitation period.

Further, even if Hood's claims were barred by the statute of limitations the contract

between the parties would have allowed Hood to bring suit anytime within four years of

receiving cancer treatments. Again at least some of Hood's claims fall within this time frame.

Having decided the statute of limitations does not bar all Hood's claims,[3] the court must

consider the other summary judgment arguments raised by Central United.

Summary judgment is appropriate when the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, if any, show that there is no

genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d

265 (1986). An issue of material fact is genuine if a reasonable jury could return a verdict for the

nonmovant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d

202 (1986). In reviewing the evidence, this Court must draw all reasonable inferences in favor of

the nonmoving party, and avoid credibility determinations and weighing of the evidence. *Reeves*

*v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105

---

[3] The court finds it difficult to determine exactly which claims are viable under this interpretation of the law. However, this question of fact should be obvious to the parties. As such the court has considered only the general principles of limitations reserving ruling on which claims are barred until that issue can be further briefed or the parties can come to some agreement.

(2000). In so doing, the Court must disregard all evidence favorable to the moving party that the jury is not required to believe. *Reeves*, 530 U.S. at 151, 120 S.Ct. at 2110.

Central United first asks for summary judgment arguing the term "day" unambiguously falls within its interpretation of the contract.

In Mississippi, "it is a question of law for the court to determine whether a contract is ambiguous and, if not, [to] enforce the contract as written." *Royer Homes of Mississippi, Inc. v. Chandeleur Homes, Inc.*, 857 So.2d 748, 751 (Miss. 2003) (internal citations omitted).

Mississippi law uses a three-tier system of interpreting contracts. *Id.* (citing *Pursue Energy Corp. v. Perkins*, 558 So. 2d. 349, 351-53 (Miss. 1990)). First, an objective reading of the language of the contract should be used to determine the purpose or intent of the parties. *Id*. In determining the objective meaning of unambiguous contract language, a court must look at the contract as a whole. *Id.* What the parties said is the best evidence of their objective intention. *Id*. at 752-53 Even if the parties disagree about the meaning of certain language, where that language is clear it evidences their intent. *Id.* at 753.

When the language of a contract is ambiguous, a court must then apply the canons of contract construction. *Id*. Where the canons cannot provide a legal answer to contract interpretation, a court must resort to parol evidence to find intent. *Id*.

There are a number of benefits available under the disputed policy. However, each of the benefits in question is controlled by the "per day" language. For instance the contract states, "[w]e will pay $160.00 per day for each of the first twelve days of each period of hospital confinement; thereafter, we will pay $100.00 per day for each day of hospital confinement."

Both parties argue the definition of "day" is clear, though they come to different clear

7

definitions.

There is no resource from which to decide the clear meaning of a word. Merriam-Webster defines "day" in relevant part as "the period of light between one night and the next; the period of rotation of a planet . . . or moon on its axis; a period of 24 hours beginning at midnight." The Merriam-Webster Dictionary 199 (5th ed. 1997). Here neither party has resorted to dictionary definitions, but the court finds it a helpful place to start. *See Thornhill v. System Fuels, Inc.*, 523 So.2d 983, 1007 (Miss. 1988) (Robertson, J. concurring) ("[I]n the overwhelming majority of cases I would accord the work of Noah Webster and . . . Strunk & White a higher status than any judicial utterance.")

In essence the dictionary defines "day" as the daylight hours of a calendar day, any twenty four hour period, or the twenty four hour period between midnights. A reasonable person could define "day" using any of these three definitions. The definition chosen, however, would substantially alter the meaning of the instant contract. An individual in the hospital from Monday at noon til Friday at noon could be eligible for three, four, or five days of benefits depending on the chosen definition. That hypothetical patient was in the hospital for five calendar days, four twenty four hour periods, and three twenty four hour periods beginning at midnight.[4]

Central United argues its definition is correct based on three grounds: (1) Mississippi courts have defined "day" as the twenty four hour period between midnights; (2) the law does not recognize fractions of days; and, (3) Medicare regulations define "day" as the twenty four hour

---

[4] In this scenario Central United would calculate four days of benefits. Hood would calculate five days of benefits.

period between midnights.  Each of these three arguments is an attempt to show "day" has a clear

meaning.

The Mississippi Supreme Court has held that the word "day" as used in a statute "means a

day commencing at 12 o'clock midnight and ending at 12 o'clock of the next night."  *O'Quinn v.*

*State*, 95 So. 513, 513 (Miss. 1923).  The court went on to state [t]his is the common

understanding and acceptation of the definition of a day, at common law and in recent judicial

decisions."  *Id*.  Central United argues its definition falls within this rubric and that such is issue

determinative.  However, the Mississippi court was not interpreting a contract with an eye

towards deciding what two parties meant when they used the word "day."  Instead the court was

attempting to determine the intent of the legislature.  Different considerations are necessary when

evaluating contracts.  There is nothing to support the inference that the definition found in

*O'Quinn* was the definition the parties intended when they entered the contract.  In fact Central

United's definition of "day" is broader than just the twenty four hour period, between midnights.

Central United paid benefits for the day of admission and then again for each period when the

patient was in the hospital at midnight.

Nothing in this contract confines "day" to this limited definition of a day that commences

at 12 o'clock midnight and ends at 12 o'clock of the next night.  In looking to the language of a

contract, a court can not simply adopt this definition as the clear and unambiguous meaning of

"day."  Instead the court must decide if the word in question is clear "to an intelligent layman

familiar only with the basics of English language."  *Thornhill,* 523 So.2d at 1007 (Robertson, J.

concurring).  A competent high school English teacher would not so limit the language.  This

court too must therefore consider a broader definition.

9

Mississippi courts have likewise held that the law does not recognize fractions of a day. *See Pannell v. Glidewell*, 111 So. 571, 572 (Miss. 1927). That rule is a legal fiction applied to statutes and court rulings. It has no place in determining the intent of the parties to a contract. Further, even if the court were persuaded to apply this principle to the instant dispute, it would not change the outcome. The Mississippi Supreme Court, writing about the consideration of fractions of days, has held it "will not endure that a mere fiction at law, introduced for the sake of justice shall work a wrong." *Biggam v. Merritt*, 1 Miss. (1 Walker) 430, 430 (1831). Similarly, The United States Supreme Court held the fraction of a day rule "is purely one of convenience, which must give way whenever the rights of the parties require it." *Town of Louisville v. Portsmouth Sav. Bank*, 104 U.S. 469, 474-75 (1881). Justice requires this court to consider fractions of a day in this dispute.

The court's duty is to determine what the parties meant or could have reasonably meant in using the term "day." Again the court must use the plain English language meaning of "day." That leads to the conclusion that "day" can reasonably mean a portion of a twenty four hour period even in the face the rule against recognizing fractions of a day.

Central United argues its interpretation is correct because Medicare calculates "patient days" as "a day [that] begins at midnight and ends 24 hours later." Medicare specifically defined "patient day." Central United did not. The fact that one insurance billing system uses a particular definition in no way means that is the only reasonable interpretation of a term. Such facts have no relevance in discerning the definition the parties had in mind when they entered the contract.

Neither party disputes the contract in question could have defined "day" in any manner it

10

chose.  The dispute arises only because Central United did not define "day."  The court is

charged with finding the intent of the parties.  The Medicare regulation is dispositive on how

Medicare reimbursement works, but it offers no insight to the definition of "day" in Central

United's contract.  Our rule of law is buttressed on a legal fiction that every citizen knows the

laws of his or her community.  In the face of the vast modern codes, this fiction, though

necessary, must sometimes defer to more apparent notions of real human experience.  It is a far

stretch of the imagination to presume that individuals are familiar with every esoteric and often

opaque Medicare regulation.  A reasonably intelligent layperson can not be expected to know

how Medicare calculates patient days, let alone understand that the calculation is to be read into

the use of everyday language contained in a private contract.

"Day" as used in the instant contract is ambiguous.  There are multiple reasonable

definitions of the term and none of those definitions is obviously controlling within the context

of the agreement.  This court must resort to the canons of construction to parse the parties'

obligations.

Under Mississippi law "[w]here the language of an otherwise enforceable contract is

subject to more than one fair reading, the reading applied will be the one most favorable to the

non-drafting party."  *Royer Homes of Mississippi, Inc.*, 857 So. 2d at 753 (citing *Leach v. Tingle*,

586 So. 2d 799, 801-02 (Miss. 1991)).

Hood asks the court to read the language of the contract as including partial calendar days

within the definition of "day."  This is substantially similar to the dictionary definition defining

"day" as the period of daylight on a calendar day.  It also fits within the common bounds of the

term "day."  This court comprehends that an individual who says 'I spent the day at the hospital'

11

is unlikely to mean the twenty four hour period between midnights or even a twenty four hour period in general. Instead the use of the term "day" in this context contemplates spending a portion of a calendar day at a hospital.

Central United next argues that even if this definition is reasonable, Hood should be denied the benefit of it because it was not her understanding of the contract. Central United's argument is predicated on Hood's actions which it states show she believed the term "day" had the same meaning Central United assigned.

Using the canons of construction, the court has determined the meaning of "day." That determination is one of law. Once a court has determined the meaning of a contract, the analysis stops. Here there is no need to resort to extrinsic evidence as the question before the court has already been answered.

Finally, Central United asserts they are entitled to summary judgment on Hood's bad faith claim. A bad faith claim requires a plaintiff to prove: (1) the insurer lacked an arguable or legitimate basis for denying the claim, and; (2) the insurer committed a willful or malicious wrong or acted with gross and reckless disregard for the insured's rights. *State Farm Mut. Auto Inc. Co. v. Grimes*, 722 So.2d 637, 641 (Miss. 1998).

Hood argues the plain language of the contract could only mean she is entitled to payment for any partial calendar day of confinement. This is not supported by the language of the contract. As discussed above the language is ambiguous. Hood's other claim survives only because she is entitled to have the ambiguous language read in the light most favorable to her. Central United had a legitimate basis for paying the claims under its calculations. According to the evidence before the court, Central United paid the claims consistent with other insurance

billing practices.  Common sense dictates payments based on hospital charges are reasonable.

There is no factual dispute that would allow a jury to decide otherwise.

Further Hood offers no evidence to support a finding that Central United committed a

willful or malicious wrong or acted with gross and reckless disregard for her rights.  Instead we

have a term that can reasonably be defined in multiple ways.  The evidence, even in the light

most favorable to Hood, says the parties had a good faith belief in different reasonable

definitions.  Central United is granted summary judgment on Hood's bad faith claim.

Hood's motion for reconsideration is GRANTED.  Central United's motion for summary

judgment is GRANTED IN PART and DENIED IN PART.

This the 30th day of September, 2009.

<div style="margin-left:40%">

**/s/ MICHAEL P. MILLS**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**

</div>